UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA J. BAZINET,<br><br>**Plaintiff,**<br><br>v.<br><br>BETH ISRAEL LAHEY HEALTH, INC.,<br>BETH ISRAEL DEACONESS<br>HOSPITAL- MILTON, INC.,<br><br>**Defendants.** | Civil Action No.: 1:23-cv-11056-AK |

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

## I.  PARTIES

1. Plaintiff, Amanda J. Bazinet, (hereinafter, the "Plaintiff") is a resident of Pascoag, Rhode Island and was employed as an Executive Office Manager at Beth Israel Deaconess Hospital- Milton, located in Milton, Massachusetts.

2. Defendant, Beth Israel Lahey Health, Inc., (hereinafter, "BILH") is a duly organized Massachusetts corporation allegedly for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". BILH has a principal office location of 20 University Road, Suite 700, Cambridge, Massachusetts, 02138.

1

3. BILH is the second largest healthcare system in Massachusetts and contains a number of affiliated hospitals, which are operated and administered in part, in common.

4. Defendant Beth Israel Deaconess Hospital- Milton, Inc., (hereinafter, "BID-Milton") is a corporation exclusively for charitable, scientific and educational purposes within the meaning of Section 501 (C)(3) of the Internal Revenue Code and has been formed to "maintain and operate charitable hospitals and services associated with charitable hospitals, to advance education and research in providing care to the sick and injured and in training health care professionals, and to promote the general health of the community". BID-Milton has a principal office location of 199 Reedsdale Road, Milton, Massachusetts 02186

5. BID- Milton is an affiliate and subsidiary of BILH and BILH has at all relevant times depicted in this matter participated with BID-Milton with respect to the facts alleged herein and specifically with the establishment and application of policies and procedure relative to requiring employees to receive the COVID-19 Vaccine as a condition of remaining employed, including definition and procedure relating to exemptions for religious beliefs.

6. The Defendants BILH and BID-Milton are collectively herein referred to as "Defendant" or "Defendants", as the context requires, unless otherwise specifically stated.

## II.  JURISDICTION

7. The Court has jurisdiction in this matter pursuant to 42 U.S.C § 1983 and Sec 2000e-5 (f) and 28 U.S.C §§ 2201, 2202 and Sec 1331 and 1343 (a) and has supplemental jurisdiction over State law claims.

**UNITED STATES EQUAL OPPORTUNITY COMMISSION ("EEOC") CHARGE**

8. The Plaintiff filed timely charges with the EEOC. The EEOC has issued the Plaintiff her "right-to-sue" notices. The Plaintiff brought this lawsuit within ninety (90) days of receipt of her right-to-sue notice. All preconditions for filing this lawsuit have been performed or have occurred.

## III.  FACTS

9. All of the Defendants are employers within the meaning of 42 U.S.C. Sec 2000e (b) and M.G.L. C 151B, Sec1(5).

10. Commensurate with the outbreak of the COVID-19 virus (hereinafter, "COVID-19") and continuing to date, Defendants issued a number of policies with respect to their employees, patients and visitors with the stated goal of protecting all of same from the ravages of COVID-19, including the prospect of contracting and/or spreading same.

11. During the entire period since the outbreak of COVID-19, the Defendants were especially affected as all areas of same were deluged with patients suffering from COVID-19 in their emergency rooms, intensive care units and throughout all other areas of their facilities.

12. Consequently, Defendants mandated that all their employees wear masks and other personal protection items stating the reason that doing so was the best way to minimize the spread of such disease.

13. Without employees such as the Plaintiff working at Defendants' facilities and being directly exposed to the dire risk of contracting COVID-19, Defendants could not have operated and would have suffered financial ruin.

14. Defendants were subjected to coercion by State and Federal governments to enact a mandatory Covid-19 Vaccine Policy whereby forcing their employees to take the COVID-19 vaccine so that Defendants would not lose governmental funding which is a key component of and essential to the functioning of Defendants' business.

15. Upon information and belief, Defendants received incentives from the government for implementing and maintaining COVID-19 related mandates.  These include, but are not limited to the Centers for Medicare & Medicaid Services (hereinafter, "CMS"), the Federal Emergency Management Agency (hereinafter, "FEMA"), the Coronavirus Aid, Relief, and Economic Security Act (hereinafter, "CARES"), National Institutes of Health (hereinafter, "NIH"), etc.

16. The State and Federal governments caused private entities to enact and regulate COVID-19 policies and mandates for purposes deemed by such governments to be necessary, resulting in the private entities doing the bidding of the government.

17. Essentially, Defendants were caused to take on a state/public function to implement, mandate and regulate policies to deal with COVID-19.

18. Plaintiff, in reliance on Defendants' assurances that she and her family were protected by wearing masks, complied, continued to work throughout the pandemic and were all directly subjected to contracting COVID-19 at its zenith.

19. In August of 2021, Defendants announced a "Mandatory Vaccine Policy", (hereinafter, the "Vaccine Policy"), which required all of their employees to have been injected by the COVID-19 vaccine or to have at least commenced a two (2) dose vaccine regimen by October 31, 2021.

20. In the event that any employee failed to strictly comply with Defendants' policy, the employee would be placed on a fourteen (14) day unpaid administrative leave until they complied and took the injections.

21. In the event that the employee failed to comply with injections by the end of the unpaid administrative period, Defendants unilaterally concluded that the employee "voluntarily terminated" their own employment. Despite the self-serving label by Defendants, this means, and was, termination.

22. The Vaccine Policy did have a provision for employees to apply for certain exemptions, including an Exemption due to an employee's sincerely held religious beliefs, by October 1, 2021.

23. Under such policy, employees that applied for a religious exemption were not to be placed on administrative leave or deemed to have voluntarily terminated their employment pending determination of the exemption request.

24. Defendants predetermined that they would accept few, if any, religious exemptions to the mandate to take COVID-19 vaccine injections.

25. Defendants predetermined that they would not offer or accept any or most requests for accommodations relative to either a medical or religious exemption request.

26. Upon information and belief, Defendants did accept at least some medical exemptions from other employees similarly situated.

27. Plaintiff never voluntarily ended her employment with Defendants.

28. Accordingly, Defendants could not have, and did not, engage in any meaningful interactive process for purposes of accommodating applicants for either medical or religious exemptions.

29. Upon information and belief, prior to the issuance of the policies and mandates set forth herein, BILH worked in co-operation with Johnson & Johnson, one of the manufacturers of the COVID-19 vaccines that Defendants mandated upon the Plaintiff and other manufacturers of said vaccine, in the development of such vaccines including testing same for effectiveness.

30. Upon information and belief, BILH has direct knowledge that the Johnson & Johnson and other like vaccines are ineffective for their intended purpose and, including the intended purpose of the Vaccine Policy issued by the Defendants set forth herein and have specific direct knowledge that fully vaccinated people can still be infected with the COVID-19 virus and still spread said virus.

31. Upon information and belief, BILH has direct knowledge of potential risks, side effects and harm to the recipient of such vaccine that BILH did not disclose to Plaintiff at or after subjecting the Plaintiff to the Vaccine policy.

32. Plaintiff was an Executive Office Manager at BID-Milton.

33. Plaintiff has sincerely held religious beliefs which place her in conflict with the provisions of the Mandatory Vaccine Policy and prevent her from receiving the injections required thereunder.

34. Plaintiff timely submitted her application for Religious Exemption, requesting to be exempt from the COVID-19 vaccine, which was mandated by her employer. She was placed on an unpaid fourteen (14) day administrative leave, her Religious Exemption was denied, and she was wrongfully terminated by Defendants on January 11, 2022.

35. Plaintiff suffered damages as a result of Defendants actions including, but not limited to, lost wages, lost benefits, costs related to survival without income from work with Defendant as well as stress to herself and her family.

36. Plaintiff requested accommodations from Defendants.

37. Defendants did not engage in any meaningful process to determine whether it could accommodate Plaintiff's request and simply denied Plaintiff's request indicating that Plaintiff's request created an undue hardship on Defendants while asserting that Plaintiff's proposal was inferior to the vaccine in achieving the goals of the mandate. Defendants followed the denial with termination of the Plaintiff.

38. Defendants insistence on Plaintiff following the Mandatory Vaccine Policy despite Plaintiff's assertion of her application for Religious Exemption is an intentional attempt by Defendants to threaten and cause harmful and offensive contact with Plaintiff through an injection known by Defendant to be against Plaintiff's sincerely held religious beliefs.

39. Defendants actions of insisting that Plaintiff follow the Mandatory Vaccine Policy despite Plaintiff's assertion of her application for Religious Exemption as well as threatening and attempting to coerce Plaintiff to take the injections are overt acts toward such harmful and offensive contacts with Plaintiff.

40. As a result of Defendants actions, Plaintiff was in fear and apprehension of imminent bodily harm, as well as in actual fear for her safety and that of her family, resulting from the financial disaster from Defendant's threat of termination of her employment should she not comply and abandon her sincerely held religious belief.

41. Any reasonable person having knowledge of the Mandatory Vaccine Policy and having received Plaintiff's request for a Religious Exemption would have recognized that the action of continuing to demand that Plaintiff be injected or lose her employment and livelihood is threatening conduct.

42. Following an announcement by the Food and Drug Administration ("FDA") on August 2, 2021, claiming that vaccines were ninety-one percent (91%) effective in preventing COVID-19 (Pfizer), it became immediately clear that was not true.

43. Illustrating by example are the following list of visible persons that became affected by COVID-19 despite having been injected by a COVID-19 vaccine along with the date their infection was announced:

| Date | Person |
|---|---|
| 08-19-2021 | U.S. Senator John Hickenlooper |
|  | U.S. Senator Angus King |
|  | U.S. Senator Roger Wicker |
| 10-19-2021 | Dept Homeland Security Secretary Alejandro Mayorkas |
| 12-19-2021 | U.S. Senator Elizabeth Warren |

| | |
|---|---|
| 01-02-2022 | Dept of Justice Secretary Lloyd Austin |
| 03-13-2022 | U.S. President Barack Obama |
| 03-31-2022 | CIA Director William Burns |
| 04-05-2022 | U.S. Attorney General Merrick Garland |
| 04-07-2022 | U.S. House Speaker Nancy Pelosi |
| 04-09-2022 | U.S. Dept of Agriculture Secretary Tim Vilsack |
| 04-26-2022 | U.S. Vice-President Kamala Harris |
| 05-04-2022 | U.S. Secretary of State Anthony Blinken |
| 06-01-2022 | U.S. Labor Secretary Marty Walsh |
| 06-15-2022 | Dr. Anthony Fauci |
| 06-2022 | U.S. Senator Wicker for 3rd time (02-2022) |
| 07-10-2022 | U.S. Senate Majority Leader Charles Schumer |
| 07-21-2022 | U.S President Joseph Biden |
| 10-22-2022 | CDC Director Rochelle Walensky |

44. Public Health Officials now acknowledge the fallacy of claims of protection afforded by vaccines against COVID-19.

   a. Dr. Deborah Birx (Former White House Coronavirus Response Coordinator):

   "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines". https:/youtu.be/8aYqTIg1A

   b. Dr. Anthony Fauci:

   "We know that people get infected and then get reinfected and people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months".

https://www.marketwatch.com/articles/Anthony-fauci-covid-19-biden-immunity-51658437525?shtied=nf-rss

45. As of August 2020, the Center for Disease Control and Prevention ("CDC") guidance on COVID-19 protection changed to eliminate differentiation based on whether a person received vaccination and now concede that so-called COVID-19 vaccines do not prevent those injected with same from contracting, suffering and/or spreading COVID-19.

46. The majority of persons now hospitalized for COVID-19 related issues have received vaccinations and caught the COVID-19 virus anyway.

47. Defendants "Mandatory Vaccine Policy" was based on false and deceptive claims that the vaccine was required to prevent them from contracting the virus and spreading it to others, all of which was known by Defendants.

48. The Commonwealth of Massachusetts terminated the "State of Emergency" caused by the COVID-19 epidemic effective June 15, 2021 and many employers, noting their error, are rehiring former employees who were terminated for reason such as Plaintiff here.

49. The Commonwealth of Massachusetts terminated the state's COVID-19 public health emergency on May 11, 2023 to align with the end of the federal public health emergency.

50. Increasingly, it is becoming clear that COVID-19 vaccines did not afford the protection to the person injected or those they come into contact with and, in fact, may have both short- and long-term adverse effects on the injected person.

51. Defendants terminated the Plaintiff for resisting being injected due to her sincerely held religious beliefs and while Defendants refused accommodations to Plaintiff by use of masks and periodic testing claiming same to be inferior to the vaccine.

52. Historically, Defendants have lauded the effectiveness of masks and periodic testing in their policies and these measures were central to the rhetoric of Defendants to cause Plaintiff to continue working through the pandemic in the face of exposure to herself, her family, friends and contacts to this hideous virus.

53. Defendants' instant degradation of masks and periodic testing by labeling them as "inferior" and unacceptable accommodation, along with Defendants unrealistic reliance on experimental vaccines, place Defendants historical position in question and now expose serious liberties taken by Defendants with the lives and well-being of Plaintiff, her family and contacts.

54. Plaintiff suffered financially, emotionally, psychologically and lost reputation, as Defendants wrongly terminated her and claimed that Plaintiff chose to voluntarily terminate her employment.

## CLAIMS FOR RELIEF

### COUNT 1
### VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

55. Paragraphs 1-54 are referenced and incorporated into Count I.

56. The Free Exercise Clause of the First Amendment to the Unites States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiff's right to free exercise of religion.

57. The religion clauses in the First Amendment of the United States Constitution say: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST., amend. I.

58. "Government is not free to disregard the First Amendment in times of crisis. *At a minimum*, that Amendment prohibits government officials from treating religious exercises worse than comparable secular activities, unless they are pursuing a compelling interest and using the least restrictive means possible." Roman Catholic Diocese v. Cuomo, 141 S.Ct. 63, 69 (2020) (emphasis added).

59. The Defendants have violated the Plaintiff's fundamental First Amendment right to her free exercise of religion and deprived her of the equal protection of the laws under the Equal Protection Clause of the Fourteenth Amendment, to the United States Constitution by failing to allow her request for a religious accommodation.

## COUNT II
## ASSAULT

60. Paragraphs 1-59 are referenced and incorporated into Count II.

61. The actions of the Defendants, including Defendants mandating that Plaintiff take injections despite Defendants knowledge of conflict with Plaintiff's sincerely held religious beliefs under threat of termination, placed the Plaintiff in fear and apprehension of imminent bodily harm.

## COUNT III
## VIOLATION OF PLAINTIFF'S EQUAL PROTECTION AND TREATMENT RIGHTS

62. Paragraphs 1-61 are referenced and incorporated into Count III.

63. The actions of the Defendants denied the Plaintiff her right to Equal Protection and equal treatment as guaranteed to her by the United States Constitution.

64. The Defendants singled out the Plaintiff for selective treatment based upon her sincerely held religious objections to the COVID-19 vaccines.

65. The Defendants discriminated between religion and nonreligion by allowing certain, nonreligious exemptions to the COVID-19 Vaccine Mandate while prohibiting religious exemptions to the same mandate for the same similarly situated field of healthcare workers.

66. The Defendants identified the Plaintiff by a single trait (religious beliefs) and then denied her protection across the board.

67. Pursuant to the Fourteenth Amendment to the United States Constitution, the Plaintiff is guaranteed the right to equal protection and due process of laws.

68. The Plaintiff had a right to be treated equally as her co-workers who elected to receive the COVID-19 vaccine.

69. The Plaintiff had no adequate remedy at law to protect the continuing deprivation of her most cherished constitutional liberties and her sincerely held religious beliefs.

70. The Plaintiff was treated differently than other employees who opted to receive the COVID-19 vaccine because her sincerely held religious beliefs were not accommodated, she was placed on an un-paid administrative leave, and was ultimately let go from her employment.

**COUNT IV**
**VIOLATION OF PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHTS**

71. Paragraphs 1-70 are referenced and incorporated into Count IV.

72. The actions of the Defendants denied the Plaintiff her right to Due Process of Law as guaranteed to her by the United States Constitution.

73. Plaintiff has the right and protected interest under the First, Fourth and Fourteenth Amendment to the United States Constitution and Articles IV, X, XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights to be free from the invasion of bodily integrity and to be free from unwanted medical intervention.

74. Because of these rights enjoyed by the Plaintiff directly under both the United States Constitution and the Massachusetts Declaration of Rights as mentioned above, her substantive due process rights were denied when the Defendants mandated the COVID-19 vaccine upon the Plaintiff, refused to honor her sincerely held religious beliefs and grant her Religious Exemption from said vaccine and wrongfully terminating her from her employment in retaliation.

75. Because of the Defendants' action and inactions as aforementioned, the Plaintiff's procedural due process rights were denied and violated.

## COUNT V
## VIOLATION OF M.G.L. CHAPTER 151 AND VIOLATION OF TITLE VII

76. Paragraphs 1-75 are referenced and incorporated into Count V.

77. At all relevant times, Plaintiff was engaged in protected activity under M.G.L. c. 151 and Title VII, upon which she suffered adverse employment action connected to such protected activity.

78. Defendants constructively terminated Plaintiff's employment, which was motivated by retaliatory animus.

79. Defendants engaged in unlawful acts of subterfuge with specific intent to deprive the Plaintiff.

**WHEREFORE, PLAINTIFF PRAYS THAT THIS HONORABLE COURT:**

Enter Judgment against the Defendants, finding that the Defendants' conduct was knowingly and intentionally in bad faith, with knowledge or reason to know that their acts would cause substantial hardship to the Plaintiff, and against public policy and common law, for damages as follows:

1. An amount to be determined at trial of this matter, but at minimum, Two Million Dollars ("$2,000,000.00") for general costs and damages;

2. For general damages in an amount to be determined for emotional distress, embarrassment, humiliation, anxiety, sleeplessness, and emotional trauma;

3. For all reasonable attorney's fees;

4. For all applicable interests and related costs;

5. For the costs of suit incurred herein, and;

6. For all other relief this Honorable Court deems meet, and just.

**<u>The Plaintiff demands a trial by jury on all counts.</u>**

|  |  |
|---|---|
|  | Respectfully submitted,<br>The Plaintiff,<br>Amanda J. Bazinet,<br>By her attorneys, |
| DATED: June 1, 2023 | /s/ Richard C. Chambers, Jr., Esq.<br>Richard C. Chambers, Jr., Esq.<br>BBO#: 651251<br>Chambers Law Office<br>220 Broadway, Suite 404<br>Lynnfield, MA 01940<br>Office: (781) 581-2031<br>Cell: (781) 363-1773<br>Fax: (781) 581-8449<br>Email: Richard@chamberslawoffice.com |
| DATED: June 1, 2023 | /s/ Joseph Spinale., Esq.<br>Joseph Spinale, Esq.<br>BBO#: 548547<br>Chambers Law Office<br>220 Broadway, Suite 404<br>Lynnfield, MA 01940<br>Office: (781) 581-2031<br>Cell: (781) 838-1411<br>Fax: (781) 581-8449<br>Email: Joe@chamberslawoffice.com |