# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA J. BAZINET,<br><br>          Plaintiff,<br><br>v.<br><br>BETH ISRAEL LAHEY HEALTH, INC.,<br>BETH ISRAEL DEASONESS HOSPITAL<br>-MILTON, INC.,<br><br>          Defendants. | Civil Action No. 1:23-CV-11056-AK |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**A. KELLEY, D.J.**

By August 2021, the COVID-19 virus had already claimed the lives of more than 600,000 Americans.[1] The nation's healthcare system could barely withstand the severity of the virus, as hospitals were overwhelmed by the number of patients suffering from the deadly disease.[2] Some hospitals experienced a shortage of providers due to burnout[3] and others were

---

[1] Lazaro Gamio et. al., <u>As Emergency Ends, A Look At the U.S. Death Toll</u>. The New York Times (May 11 2023), https://www.nytimes.com/interactive/2023/05/11/us/covid-deaths-us.html. The Court takes judicial notice of these facts which are a matter of public record. When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it," <u>Foley v. Wells Fargo Bank, N.A.</u>, 772 F.3d 63, 71-72 (1st Cir. 2014), though the Court may also consider "matters of public record" and "other matters susceptible to judicial notice," <u>Newton Covenant Church v. Great Am. Ins. Co.</u>, 956 F.3d 32, 35 (1st Cir. 2020).

[2] Will Stone, <u>A COVID Surge Is Overwhelming U.S. Hospitals, Raising Fears Of Rationed Care</u>, NPR (Sep. 5 2021), https://www.npr.org/sections/health-shots/2021/09/05/1034210487/covid-surge-overwhelming-hospitals-raising-fears-rationed-care

[3] COVID survey finds more than half of healthcare workers stressed, overworked, and ready to leave, The Harvard Gazette (Mar. 31 2023), https://news.harvard.edu/gazette/story/2023/03/covid-burnout-hitting-all-levels-of-health-care-workforce/

forced to ration care.[4]  In response, many private and public entities instituted vaccine mandates to curb the spread and infection of COVID-19.

The Plaintiff, Amanda J. Bazinet ("Plaintiff"), brings this case against her former employers over her opposition to their COVID-19 vaccination policies.  [Dkt. 8 ("Am. Compl.")].  Plaintiff is a former employee at Beth Israel Deaconess Hospital-Milton, located in Milton, Massachusetts.  [Am. Compl. at ¶ 1].  The Defendants are Beth Israel Lahey Health, Inc. [Id. at ¶ 2] and Beth Israel Deaconess Hospital-Milton, Inc. [Id. at ¶ 4], an affiliate and subsidiary of BILH (hereinafter "Defendants").

In August 2021, Defendants issued a Mandatory Vaccine Policy ("Policy") requiring all employees to receive a two-dose regimen of the COVID-19 vaccine by October 31, 2021.  [Id. at ¶ 19].  Plaintiff refused to comply with the Policy by refusing to receive the vaccine and was deemed to have voluntarily terminated her employment on January 11, 2022.  [Id. at ¶¶ 21, 34].

Plaintiff now brings five separate causes of action against the Defendants.  In Count II, Plaintiff alleges that the Defendants committed civil assault against her.  [Id. at ¶¶ 60-61]. Counts I, III, and IV allege constitutional claims against the Defendants.  [Id. at 11-14]. Specifically, Count I alleges a violation of the Free Exercise Clause [Id. at ¶¶ 55-59], Count III alleges a violation of Equal Protection Rights under the Fourteenth Amendment [Id. at ¶¶ 62-70], and Count IV alleges a violation of Plaintiff's substantive and procedural due process rights under the U.S. Constitution and various Articles of the Massachusetts Declaration of Rights [Id. at ¶¶ 71-75].  Finally, Count V alleges that Plaintiff suffered employment discrimination pursuant to Mass. Gen. Laws ch. 151 and Title VII of the Civil Rights Act [Id. at ¶¶ 76-79].

---

[4] Supra note 2.

Defendants moved to dismiss Counts I-IV for failure to state a claim upon which relief can be granted pursuant to Fed. Civ. P. 12(b)(6) and Local Rule 7.1(b)(1).  [Dkt. 12]. Defendants failed to address Count V in their Motion.  [Dkt. 13].

Since Plaintiff has failed to plead sufficient facts to support her allegations, Defendants' Motion to Dismiss is **GRANTED** for Counts I-IV.  As to Count V, which the Defendants failed to address in their Motion, the Court does not believe that Plaintiff has adequately stated a claim and thus intends to dismiss this claim sua sponte, but will give Plaintiff the opportunity to respond first.

## I.    BACKGROUND

Unless otherwise noted, the facts are presented as alleged in the Amended Complaint. [See Dkt. 8 ("Am. Compl.")].  In August 2021, the Defendants implemented a Mandatory Vaccine Policy requiring their employees to receive (or at least commence a two-dose regimen of) the COVID-19 vaccine by October 31, 2021.  [Id. at ¶ 19].  An employee who failed to comply with the Policy was placed on a fourteen-day unpaid administrative leave.  [Id. at ¶ 20]. If, at the end of the administrative leave, an employee still had not received the vaccine, Defendants considered them to have "voluntarily terminated" their employment.  [Id. at ¶ 21].

The Policy allowed employees with sincerely held religious beliefs to apply for an exemption.  [Id. at ¶ 22].  Plaintiff applied for a religious exemption, alleging that her sincerely held religious beliefs conflicted with the Policy and prevented her from receiving the COVID-19 vaccines.  [Id. at ¶¶ 33-34].  The Amended Complaint is otherwise silent as to what the Plaintiff's religious beliefs are, how they would be undermined by complying with the Policy, or how the exemption would have remedied the burden she allegedly feels. [See id.].  The

Defendants denied Plaintiff's exemption and she continued to refuse to receive the vaccine.  [See id. at ¶¶ 34, 37].  Plaintiff alleges that the Defendants predetermined that they would accept few, if any, religious exemptions and accommodation requests.  [Id. at ¶¶ 24-25].  At the end of her administrative leave, and in accordance with the Policy, Plaintiff was terminated from her employment.  [Id. at ¶ 34].

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must allege "sufficient factual matter" that is legally actionable and is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To resolve a motion to dismiss, the court employs a two-pronged approach.  First, the court identifies and disregards allegations that are legally conclusory.  Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012).  Second, the court must accept all non-conclusory factual allegations as true.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  A claim is facially plausible if, after accepting as true all non-conclusory allegations, the court can draw a reasonable inference that the Defendant is liable for the misconduct.  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III.   DISCUSSION

### a.   Civil Assault

To sufficiently plead an allegation of civil assault, the plaintiff must provide facts that the defendant took an action that was intended to cause harmful or offensive contact or place the plaintiff in fear or apprehension of imminent harmful contact.  Guzman v. Pring-Wilson, 963 N.E.2d 1196, 1199 (Mass. App. Ct. 2012) (citing, e.g., Commonwealth v. Melton, 763 N.E.2d 1092 (Mass. 2002)).  Additionally, the plaintiff must demonstrate that she had fear or

apprehension of an imminent harmful or offensive contact.  Id.  Imminent means that there must not be any "significant delay" in making the threat or conducting the contact.  E.g., Ginsberg v. Blacker, 852 N.E.2d 679, 684 n.8 (Mass. App. Ct. 2006) (citing Restatement (Second) of Torts § 29 (Am. L. Inst. 1965)).

To commit attempted battery, the defendant must threaten or attempt to cause physical harm to the plaintiff.  Commonwealth v. Gorassi, 733 N.E.2d 106, 110 (Mass. 2000).  To satisfy attempted battery theory, the defendant must intend harmful or offensive contact and take an "overt step" toward accomplishing the contact.  Commonwealth v. Melton, 763 N.E.2d 1092, 1096 (Mass. 2002).  Under Massachusetts law, "[w]ords do not make the actor liable for assault unless together with other acts or circumstance they put the other in reasonable apprehension of imminent harmful or offensive contact." Gouin v. Gouin, 249 F. Supp. 2d 62, 69–70 (D. Mass. 2003) (quoting Commonwealth v. Delgado, 326 N.E.2d 716 (Mass. 1975).

Defendants contend that Count II of civil assault should be dismissed because the Amended Complaint fails to allege facts showing that they acted with the requisite intent.  [Dkt. 7 at 6].  The Court agrees.  In the Amended Complaint, Plaintiff merely makes a conclusory allegation that Defendants' insistence on complying with the Policy was "an intentional attempt" to "threaten and cause harmful and offensive contact."  [Am. Compl. at ¶ 38].  Moreover, Plaintiff even acknowledges in her Amended Complaint the intended purpose of the Policy was to "afford protection to its employees and patients from infection and spread of COVID-19." [See id. at ¶ 30].  Indeed, Plaintiff has failed to allege any facts to support their allegation that Defendants acted with assaultive intent.  [See Am. Compl.].

Furthermore, even if the Amended Complaint sufficiently pleaded that Defendants acted with the requisite intent, it still fails to show that they committed an overt act that would have

placed Plaintiff in reasonable apprehension of imminent harmful or offensive contact.  In the Amended Complaint, Plaintiff alleges that Defendants committed overt acts when they insisted that she abide by the Policy and "attempted to coerce [her] to take the injections."  [Id. at ¶ 39]. These allegations fail to state a claim because they rely on Defendants' words alone, rather than an overt act—such as an apparent physical movement— and thus could not put Plaintiff in reasonable apprehension of contact.

Moreover, there are no allegations that Defendants took any overt act to physically administer the vaccine to the unwilling Plaintiff.  [See id.].  Mandatory workplace vaccination requirements do not constitute civil assault.  See McEntee vs. Beth Israel Lahey Health, Inc., No. 22-cv-11952-DLC, 2023 WL 4907617, at *4 (D. Mass. Aug. 1, 2023) (granting motion to dimiss in favor of hospital, which is the same Defendant here, because former employees failed to allege facts showing an imminent apprehension of harm or offensive conduct from hospital's mandatory vaccination policy for COVID-19 after given two months to comply with policy or be terminated).  See Reese v. Tyson Foods, Inc., No. 3:21-05087-CV-RK, 2021 WL 5625411, at *7 (W.D. Mo. Nov. 30, 2021) (finding assault claim unlikely to succeed on the merits where plaintiff admitted he was not physically forced to receive vaccine).  This is true even if termination is a consequence for noncompliance with the mandatory vaccination policy.  See McEntee, 2023 WL 4907617 at *3 (finding that termination as consequence for noncompliance with vaccine mandate is not civil assault); Johnson v. Tyson Foods, Inc., 607 F. Supp. 3d 790, 810 (W.D. Tenn. 2022) (granting defendants' motion to dismiss assault claim because the plaintiff is "free to accept or refuse the COVID-19 vaccine and if she refuses, she need only pursue employment elsewhere").

Finally, none of Plaintiff's allegations explain why she was placed in fear and apprehension of imminent bodily harm.  First, the allegations do not describe a threat that is *imminent* except for a legally conclusory statement that such a threat occurred.  [See Am. Compl. at ¶ 61].  Quite the opposite, the Amended Complaint instead supports the contention that the Plaintiff had ample time to consider whether she would choose to comply with the Policy.  [Dkt. 13 at 11].  The Policy was enacted in August 2021 and employees were thus on notice to comply with its stipulations to undergo the two-dose regimen by October 31, 2021.  [See Am. Compl. at ¶ 19].  This gave the Plaintiff nearly two months, in addition to the 14 days of administrative leave, to deliberate as to whether she would comply with the Policy.  Such a timeline can hardly be considered "imminent" within the meaning of the law.  See Ginsberg, 852 N.E.2d at 684 n.8 (stating that "imminent" means that there must not be any significant delay between the threat and carrying out the act).

Moreover, Plaintiff has not alleged any facts that support her contention that she was placed in imminent *bodily harm*.  The Amended Complaint alleges that the Plaintiff was in fear and apprehension of imminent bodily harm because (1) Defendants insisted that she comply with the Policy despite her assertion that doing so would conflict with her sincerely held religious beliefs, and (2) because Defendants threatened termination.  [Am. Compl. At ¶¶ 40-41].  However, to properly state a claim for civil assault, Plaintiff must demonstrate Defendant intended to "put the victim in fear of imminent bodily harm, not that that the [D]efendant's actions created a generalized fear or some other unspecified psychological harm to the victim."  Commonwealth v. Gorassi, 733 N.E.2d 106, 110 (Mass. 2000) (reversing an assault conviction because there was no attempted application of physical force or threat of physical force).  Neither

7

the threat of termination nor insistence on compliance constitute bodily harm because there is no attempt of physical force or threat of physical force.

Therefore, Count II fails to state a claim because (1) the Amended Complaint does not identify the requisite intent, (2) none of the factual allegations demonstrate that Plaintiff was reasonably placed in fear of imminent bodily harm, and (3) threatening termination or insisting on compliance is legally insufficient to constitute assault.

### b. Constitutional Claims (Counts I, III, and IV)

A plaintiff alleging a violation of their constitutional rights against a local or state entity must employ 42 U.S.C. § 1983 ("Section 1983"). Hickey v. Tompkins, No. CV 19-11349-LTS, 2021 WL 858439, at *3 (D. Mass. Mar. 8, 2021) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). To succeed in a Section 1983 claim, Plaintiff must prove (1) that Defendants acted under color of law and (2) that she was deprived of a federally secured right. Klunder v. Brown Univ., 778 F.3d 24, 30 (1st Cir. 2015). Defendants argue that Plaintiff has failed to sufficiently plead both elements. The Court agrees.

The Amended Complaint correctly characterizes Defendants as private entities. [Am. Compl. at ¶¶ 2, 4]. A private entity can qualify as a state actor through (1) the state compulsion test, (2) the nexus/joint action test, or (3) the public function test. Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005). Through the state compulsion test, a private entity qualifies as a state actor if the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the challenged conduct must in law be deemed to be that of the State." Klunder, 778 F.3d at 30. Under the nexus/joint action test, a private entity can qualify as a state actor if, given the totality of the circumstances, the state "has so far insinuated itself into a position of interdependence with the private entity that it was a joint

participant in the challenged activity."  Id. at 31.  Finally, under the public function test, a private

entity can qualify as a state actor if it performs a public function that "has been traditionally the

exclusive prerogative of the [s]tate."  Id. (internal quotation marks omitted).

Plaintiff fails to sufficiently plead that Defendants acted under color of law through the

state compulsion or nexus/joint activity test.  Plaintiff attempts to characterize Defendants as

state actors by alleging that they were coerced by the federal government to enact vaccine

policies or lose their federal funding.  [Am. Compl. at ¶ 14].  However, receiving federal funding

is insufficient to qualify a private entity as a state actor.  McEntee, 2023 WL 4907617 at *4

(holding that Beth Israel Lahey Health, Inc., the same defendant here, was not a state actor even

though it received federal funds); See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir.

1994) (finding receipt of federal funds such as Medicare and Medicaid insufficient to establish

private hospital as state actor); Together Emps. v. Mass Gen. Brigham Inc., 573 F. Supp. 3d 412,

446 (D. Mass. 2021) (stating hospital association was a private employer and not a state actor

even though it received federal funding and instituted COVID-19 vaccine mandate on its

employees).

Additionally, Plaintiff makes the unsupported contention that Defendants "received

incentives from the government for implementing and maintaining COVID-19 related mandates"

and were thereby "subject to coercion" by the state.  [Am. Compl. at ¶¶ 14-15].  Even if the

Court accepted the allegations about coercion, Plaintiff would still fail to meet the state

compulsion and nexus/joint test.  The First Circuit has already noted that government regulation,

even if extensive, is insufficient to transform a private entity into a state actor.  See Rockwell, 26

F.3d at 258 (finding no nexus or state action because hospital had no authorization to enact

ordinances and "government regulation, even extensive regulation, and the receipt of federal

funds, such as Medicare, Medicaid and Hill–Burton funds, are insufficient to establish that a hospital or other entity acted under color of state law"). Therefore, Plaintiff has failed to state a valid claim that Defendants are state actors under the state compulsion and nexus/joint activity test.

Plaintiff also fails to show that in implementing or enforcing the Policy, Defendants qualified as a state actor through the public function test, because vaccine mandates have not been exclusively executed by the state. While the Policy here was enacted to serve the public good [Am. Compl. at ¶¶ 10, 11, 42], that alone is an insufficient allegation to state a claim that Defendants were performing an activity exclusively held by the state. See Manning v. Whole Foods Mkt. Grp., Inc., No. 21-cv-10833, 2022 WL 194999, at *5 (D. Mass. Jan. 21, 2022) (finding that a private entity's decision to implement an internal COVID-19 mask mandate to serve the public good does not mean the court can infer they were performing a public function); Tyson Foods, 607 F. Supp. 3d at 801 (holding that a private business's implementation of an employee vaccination policy is not akin to any of "those limited activities – for example running a city — that have 'traditionally and exclusively' been performed by the government"). Therefore, Plaintiff's constitutional allegations all fail to state a claim because they did not show Defendants are qualified as state actors.

Plaintiff also fails to sufficiently plead that she was deprived of a federally secured right. In fact, the Supreme Court has rejected the idea that there is a fundamental right to refuse vaccinations. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 29-30 (1905) (noting that mandatory vaccination law does not violate Fourteenth Amendment to the Constitution); see also Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 70-71 (2020) (Gorsuch, J., concurring) (noting that under United States Supreme Court precedent there is no fundamental

right to "bodily integrity" with respect to mandatory vaccinations); <u>Massachusetts Corr. Officers</u>
<u>Federated Union v. Baker</u>, F. Supp. 3d 249, 255 (D. Mass. 2022) (holding that the plaintiffs'
motion for injunctive relief was denied because they have not demonstrated a likelihood of
success on the merits that mandating employees receive the COVID-19 vaccine is a violation of
their fundamental right to bodily integrity and continued employment).

Noncompliance with mandatory vaccine laws is not a protected liberty interest.
<u>Jacobson</u>, 197 U.S. at 38.  In <u>Jacobson</u>, the plaintiff challenged the state's mandatory vaccine
laws alleging that it infringed his liberty and due process rights under the Fourteenth
Amendment.  However, the Supreme Court upheld the state's police powers to implement
vaccine mandates against the smallpox outbreak.  <u>Id</u>.  In doing so, the Supreme Court rejected
the Fourteenth Amendment challenge to the state's vaccine law because it had "real [and]
substantial relation to the protection of the public health and the public safety."  <u>Id</u>. at 31.  Here,
Plaintiff attempts to assert a federally secured right to bodily integrity.  [Am. Compl. at ¶ 73].
However, the Court in <u>Jacobson</u> reasoned that, even if mandatory vaccines intervened with a
federally secured right, freedoms can be constrained to secure the health and welfare of the state.
<u>Jacobson</u>, 197 U.S. at 26.  Thus, it is well-settled that in a public health emergency, such as a
viral outbreak, the individual rights that would otherwise be protected can be reasonably and
constitutionally constrained to benefit the well-being of the majority.  <u>See</u> <u>Calvary Chapel of</u>
<u>Bangor v. Mills</u>, 459 F. Supp. 3d 273, 284 (D. Me. 2020) (noting that "although a government
cannot use a health crisis as a pretext for trampling constitutional rights, the Supreme Court has
long recognized that 'a community has the right to protect itself against an epidemic of disease
which threatens the safety of its members'").  This is undoubtedly and particularly true of a
hospital enacting a vaccination requirement to protect its patients, employees, and general

11

population.  In a pandemic, one's fate is interconnected with that of the community.  As in

Jacobson, this Court declines to interpret the right to refuse mandatory vaccines as a federally

secured right under the Fourteenth Amendment.  Therefore, Plaintiff failed to state a claim that

she was deprived of a federally secured right.

Therefore, Plaintiff has failed to state any of her constitutional claims because she has not

sufficiently alleged (1) that Defendants are state actors and (2) that she was deprived of a

federally secured right.  Based on the inadequacy of Plaintiff's allegations, Counts I, III, and IV

are dismissed.

### c.    Massachusetts Substantive and Procedural Due Process Rights (Count IV)

The Plaintiff alleges that she had the right and protected interests under Articles IV, X,

XX, XXI, XXIX, and XXX of the Massachusetts Declaration of Rights violated.  [Am. Compl.

At ¶ 73].  The Court is at a loss to understand the basis of Plaintiff's allegations because many of

these Articles are irrelevant to this action.  Article IV addresses the right to self-governance,

Article XX provides that rights of the legislature are reserved to the legislature, Article XXI sets

forth the speech and debate clause, Article XXIX applies to the impartial administration of

justice, and Article XXX addresses separation of powers. See MA. Const. arts. IV, XX, XXI,

XXIX, XXX.

Plaintiff alleges in her Amended Complaint that her rights under the Massachusetts

Declaration of Rights were violated.  Although the parties did not address the Massachusetts

Civil Rights Act (MCRA), the Court will analyze the viability of those claims under the MCRA

which is the proper cause of action to enforce the Massachusetts Declaration of Rights.  M.G.L.

ch. 12, § 11I.  Plaintiffs fail to state a claim under the MCRA as well because they did not plead

sufficient facts.

To succeed in a MCRA claim, the plaintiff must prove that (1) there is a protected right that exists under the U.S. Constitution, laws of the United States, or the state constitution; (2) there was an interference or attempted interference with that right; and (3) the interference or attempted interference amounted to "threats, intimidation, or coercion."  <u>Bally v. Northeastern Univ.</u>, 532 N.E.2d 49, 51-52 (Mass. 1989).

The Court has already established that the first element fails because the right to bodily integrity does not extend to vaccines.  <u>Jacobson</u>, 197 U.S at 38.  Additionally, the latter two elements fail because the Plaintiff has not alleged that her supposed secured right was interfered with through threats, intimidation, or coercion.  Termination from employment due to noncompliance with mandatory vaccine policies is insufficient to constitute an interference at all. <u>McEntee</u>, 2023 WL 4907617 at *5 (granting defendant's motion to dismiss under MACRA because plaintiffs merely faced termination following noncompliance with vaccine mandate rather than being physically compelled to receive the vaccine).

Therefore, Count IV fails to plead a viable federal or state civil rights violation.

### d.  Title VII (Count V)

Plaintiff also makes a claim that her rights were violated under Title VII; Defendant fails to address her arguments in regards to that claim.  However, since the claim does not appear to be viable, the Court intends to dismiss the claim sua sponte, but will only do so after giving the parties the opportunity to file a responsive brief.  "If it is crystal clear that the plaintiff cannot prevail" then a sua sponte dismissal may be appropriate.  <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31, 37 (1st Cir. 2001).  Such actions though are considered "strong medicine, and should be dispensed sparingly."  <u>Id.</u> at 33.  "The general rule is that sua sponte dismissals … are

'erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond.'" Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 22-23 (1st Cir. 2014) (quoting Futura Dev. Of P.R., Inc. v. Estado Libre Asociado de P.R., 144 F.3d 7, 14 (1st Cir. 1998).

Title VII gives employees several broad protections from discrimination in the workplace.  Title VII generally prohibits employers from taking adverse employment actions against actual and prospective employees on the basis of their "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  Further, Title VII requires employers to take reasonable steps to accommodate their employees' religious beliefs and practices, unless doing so would be an undue hardship on the business.  See 42 U.S.C. § 2000e(j); 29 C.F.R. § 1605.2.  Termination constitutes adverse employment action.  See 42 U.S.C. § 2000e-2(a).

Claims of religious discrimination under Title VII are analyzed under a two-part framework.  Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004).  First, a plaintiff "must make her *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action."  Id.  Second, if the plaintiff establishes a *prima facie* case, "the burden then shifts to the employer to show that it offered a reasonable accommodation," or if it did not, "that doing so would have resulted in undue hardship."  Id.  In conducting an undue hardship inquiry, the court must consider "not only … direct economic costs, but indirect ones related to health and safety."  Together Employees, 573 F.Supp.3d at 435.  To qualify as a *bona fide* religious practice, the plaintiff must show "both that the belief or practice is religious and that it is sincerely held."  E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir. 2002).  Title VII defines religion as including "all aspects of religious observance and

practice, as well as belief…" 42 U.S.C § 2000e(j).  Notably, a religious belief is distinct from a

set or moral, ethical, medical, or personal values.  Griffin vs. Massachusetts Dep't of Revenue,

No. 22-CV-11991-FDS, 2023 WL 4685942, at *4 (D. Mass. July 20, 2023).

     Here, Plaintiff alleges that Defendants failed to provide reasonable accommodations

(periodic testing and masking) as an alternative to undergoing the two-dose COVID-19 vaccine

regimen.  [Am. Compl. at ¶ 51].  Plaintiff alleges that Defendants rejected her accommodations

by citing that they would amount to undue hardship.  [Id. at ¶ 37].  Consequently, Plaintiff

alleges that she was unlawfully terminated because of her sincerely held beliefs in refusing to be

vaccinated.  [Id.].  Plaintiff also alleges that Defendants discriminated between religion and

nonreligion by allowing nonreligious exemptions to the same mandate while prohibiting

religious exemptions.  [Id. at 65].

     Plaintiff has not sufficiently alleged that her reluctance to be vaccinated is grounded in

sincerely held religious beliefs.  Instead, Plaintiff's objections appear to stem from her

philosophical, medical, or scientific beliefs about the vaccine.  Indeed, much of the Amended

Complaint merely attacks the efficacy and validity of the COVID-19 vaccine.  [See Am. Compl.

at ¶¶ 42-47, 50].  Moreover, the Plaintiff does not describe in her Amended Complaint her

religious beliefs or principles in any meaningful way, or how they relate to vaccines generally or

to the COVID-19 vaccine specifically.  In fact, she does not allege that her religion requires her

to observe certain medical limitations that include a refusal to take vaccines.  [See id.].

Additionally, there is no specific indication as to how Plaintiff's beliefs or principles have

affected her other medical decisions in the past.  See Griffin, WL 4685942, at *7.

     Even if the Court assumes that Plaintiff holds sincerely held religious beliefs against

receiving the COVID-19 vaccine, Plaintiff's Title VII claim still likely fails because the

reasonable accommodation she proposed would likely have caused undue hardship to

Defendants.  While Defendants failed to address this in their brief, relevant case law has asserted

that, in a global pandemic, unvaccinated employees cause an undue hardship to employer-

hospitals because they can spread COVID-19 to colleagues and vulnerable patients.  See

Together Employees, 573 F.Supp.3d 412 (denying employee's preliminary injunction against

hospital employers for Title VII violation because approving accommodation to unvaccinated

employees who were denied religious exemption would have caused undue hardship by

permitting the spread of disease and undermining public trust in hospitals); Robinson vs.

Children's Hosp. Boston, No. CV 14-10263-DJC, 2016 WL 1337255, at *9-10 (D. Mass Apr. 5,

2016) (granting hospital's summary judgment because accommodating plaintiff's request to

remain unvaccinated while employed at hospital is an undue hardship as it would increase the

risk of spreading influenza to an already vulnerable population).  Accommodating the request for

exemption in those contexts may have caused death or increased the spread of disease to

medically vulnerable patients, ultimately leading to more hospitalizations and further draining

the already overburdened provider workforce.  Given that requests like those made by Plaintiff

have similarly been rejected for placing an undue hardship on hospitals, it stands to reason that

the same would be the case at the hospital at issue here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [12] is **GRANTED** with

respect to Counts I-IV.  As to Count V, the Court will provide Plaintiff an additional 10 days

from the issuance of this order for Plaintiff to respond to the Court's concerns with her Title VII

claim via a supplemental brief.  Failure to respond within that time frame will result in the

claim's dismissal.  Following Plaintiff's response, the Court will provide Defendants an additional 5 days to file their own response to Plaintiff's supplemental briefing.

       **SO ORDERED.**

Dated: December 22, 2023                          /s/ Angel Kelley
                                                 Hon. Angel Kelley
                                                 United States District Judge